FILED
United States Court of Appeals
Tenth Circuit

June 13, 2014

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

STEVEN D. BONNEY,

Petitioner - Appellee,

v.

EDDIE WILSON, Warden,
Wyoming State Penitentiary;
ROBERT LAMPERT, Director,
Wyoming Department of Corrections;
PETER K. MICHAEL, Attorney
General of the State of Wyoming,

Respondents - Appellants.

No. 13-8052

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 2:11-CV-00345-CAB)**

---

William DeKrey, Student Intern (Diane E. Courselle, Director, Jennifer Kirk, Student Intern, and Jesse Feinsod, Student Intern, on the brief), Defender Aid Program, University of Wyoming College of Law, Laramie, Wyoming, for Petitioner-Appellee.

Meri V. Geringer, Wyoming Senior Assistant Attorney General (Peter K. Michael, Attorney General, and David L. Delicath, Deputy Attorney General, with her on the briefs), Cheyenne, Wyoming, for Respondents-Appellants.

---

Before **GORSUCH**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

The issue here, as framed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), is whether the Wyoming state court's denial of Petitioner's ineffective assistance of counsel claim on collateral review of a guilty plea "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. 28 U.S.C. § 2254(d)(1). The federal district court thought so. For reasons that follow, we think not. Exercising jurisdiction pursuant to 28 U.S.C. § 2253(a), we reverse.

I.

Five members of Petitioner Steven Bonney's extended family, four girls and one boy, accused him of sexually assaulting them on various occasions when they were between the ages of six and eight and Petitioner was a teenager. The assaults allegedly occurred around 2000 or 2001. The State of Wyoming eventually charged Petitioner in 2008 with four counts of second degree sexual assault in violation of Wyo. Stat. Ann. § 6-2-303(a)(v), and one count of third degree sexual assault in violation of Wyo. Stat. Ann. § 6-2-304(a)(ii).[1] Two of the second degree sexual assault counts involved female victim T.N., while the remaining three counts involved female victim V.B. Pursuant to a plea agreement, Petitioner pled guilty to

_____

[1] Both statutes were in force at the time of Petitioner's offenses. The statutes were subsequently repealed in 2007 and recodified as amended. The conduct previously prohibited by § 6-2-303(a)(v) is now prohibited by § 6-2-314(a)(i). The conduct previously prohibited by § 6-2-304(a)(ii) is now prohibited by §§ 6-2-315(a)(ii) and 6-2-316(a)(i).

two counts of second degree sexual assault, one each involving T.N. and V.B.

The factual basis for his plea, which Petitioner did not contest, "established that Bonney had committed acts of vaginal and anal intercourse with T.N. and acts of anal intercourse with V.B." when "[t]he victims were both around eight years old . . . and Bonney was sixteen or seventeen years of age." Bonney v. Wyoming, 248 P.3d 637, 638 (Wyo. 2011) (appeal from the denial of a motion to reduce sentence pursuant to Wyo. R. Crim. P. 35(b)). As part of the plea agreement, the State agreed to (1) dismiss the remaining charges against Petitioner; (2) forego filing similar charges against Petitioner involving P.M., the lone male victim; and (3) recommend that Colorado authorities not charge Petitioner with similar crimes allegedly committed against another victim, K.B., in that State. See id. At sentencing, K.S., a fifth reported victim of Petitioner, tendered a victim impact statement. Notably, the information did not charge Petitioner with any wrongdoing involving K.S. Her oral statement offered no specifics as to Petitioner's misconduct, but focused on how the tragedy had divided the family. The state trial court accepted the plea agreement and, consistent therewith, sentenced Petitioner to consecutive fifteen to twenty-year terms of imprisonment. The court suspended the second sentence in favor of probation. The court entered its final judgment and sentence on March 3, 2009.

Three or four days prior to the thirty-day deadline under Wyoming law for filing a motion to withdraw Petitioner's guilty plea, around March 30, 2009, his

3

retained defense counsel received a letter.[2]  That letter, addressed to the sentencing judge and forwarded to counsel, read in its entirety:

> My name is [K.S.]  My case was dropped but I still would like for you to take the time and read my letter[.]  My cousin[,] Steven D. Bonney, did touch me in ways that were inappropriate[.]  I am left with the mental abuse from that but I want to be honest with you[.]  I am seeing a pshyciatic [sic] doctor as well as a spiritual healer and that is why I am writing you this letter.  I was not completely honest with the whole thing.  He did not have sexual contact with me but he did put his fingers in places that no cousin should have[.]  I was scared at the time and just wanted him to feel the pain that I have been feeling since this all started[.]  I did not mean to fabricate the truth and for that I am sorry[.]  It has been an emotional roller coaster for me and I honestly couldn[']t tell you which way was up or down.  I used to be such a good student and loved sports but since I was so young and held it all in for so long it really started to mess with me, my mind, body and soul.  I know adding to the real story was wrong and I live with that everyday[.]  I feel like I am being punished all over again for what he had done to me because I am now writing this letter to say sorry to him for the fabrication but yet he has not said sorry to me for what he did do.  I also know that [T.N.] fabricated her story as well[.]  She doesn[']t want to admit the truth and I feel sorry for her as well because I know it will hurt her in the long run, but I know the importance of the truth.

Aplts' App'x at 661 (all caps removed).  Defense counsel never informed Petitioner of K.S.'s letter and the thirty-day deadline for seeking relief from Petitioner's guilty plea passed.  About a month later, Petitioner retained new counsel.

A.

After he became aware of K.S.'s letter, Petitioner filed a state petition for

---

[2]  Wyo. R. App. P. 2.01(a) generally provides a notice of appeal must be filed "within 30 days from entry of the appealable order."  In Brown v. Wyoming, 175 P.3d 1158, 1162–63 (Wyo. 2008), the court held the same time limitation generally applies to a motion to withdraw a guilty plea pursuant to Wyo. R. Crim. P. 32(d).

4

post-conviction relief pursuant to Wyo. Stat. Ann. § 7-14-101(b). Therein, Petitioner raised a host of ineffective assistance of counsel claims. Among them, Petitioner claimed he never wanted to plead guilty and "should have been notified of the K.S. letter and given a chance to file an appeal or move to withdraw his plea." Aplts' App'x at 94. The sentencing court granted Petitioner an evidentiary hearing on that claim (and two others not at issue here). At the hearing, the court admitted into evidence K.S.'s affidavit. The affidavit is not part of the appellate record but the court's description of it is. K.S. stated "she lied to the police by representing that Petitioner had sexually assaulted her and T.N." Id. at 569. K.S. "claimed that T.N. had encouraged her to corroborate T.N.'s version of events." Id. Additionally, K.S. "generally claimed that T.N. was not a truthful person and that T.N., V.B., and K.B. conspired" against Petitioner. Id. at 569–70. K.S.'s affidavit did not support her conspiracy claim "with any specific information" and made no mention of P.M. being part of the purported conspiracy. Id. at 570. K.S., then sixteen years old, further testified at the hearing:

> Q. I want to ask you about a couple of questions that I have with respect to this letter. . . .
> A. Yes.
> Q. "My cousin, Steven D. Bonney, did touch me in ways that were inappropriate." Did you write that?
> A. Yes.
> Q. Can you please explain what you meant by that[?]
> A. He would rub my inner thighs. And I would sit on his lap and – basically it was more of a touching of like below the waist, but my clothes were still on.

5

Q. Okay. Now, I want you to be very specific. When you say inner thighs, can you please describe specifically where he would touch you?
A. More towards the vaginal region.
Q. All right. Did he actually put his hands on the vaginal area?
A. Yes.

* * *

Q. The letter states, "He did not have sexual contact with me, but he did put his fingers in places that no cousin should have." Did I read that correctly?
A. Yes.
Q. Did you write that?
A. Yes.
Q. And can you please explain what you meant by that statement[?]
A. Once again, it was touching in my vaginal area and the inner part of my thighs.[3]

* * *

Q. [The letter also states,] "I also know that . . . [T.N.] fabricated her story as well." Do you see that?
A. (Witness nodded head.)
Q. Did you write that?
A. Yes.
Q. Has T.N. ever admitted to you that she lied about what was done to her by Mr. Bonney?
A. No.

Id. at 399–401.

B.

In January 2010, the Wyoming trial court denied Petitioner post-conviction relief in a written order. Citing Strickland v. Washington, 466 U.S. 668 (1984), the court explained that to establish ineffective assistance of counsel, Petitioner must show counsel's failure to timely notify him of K.S.'s letter was deficient, i.e., such

---

[3] On cross examination, K.S. testified Petitioner did not have vaginal or anal intercourse with her. Aplts' App'x at 401–02.

6

failure fell below an objective standard of reasonableness, and that such failure prejudiced his defense. The state court further explained that under Wyoming law "when a guilty plea is challenged based upon ineffective assistance of counsel, the defendant, to establish prejudice, must show that there is a reasonable probability that, but for counsel's errors, a plea of guilty would not have been entered and the defendant would have insisted on going to trial." Aplts' App'x at 570 (quoting Palmer v. Wyoming, 174 P.3d 1298, 1301 (Wyo. 2008)). The court observed that "[t]his 'reasonableness' standard is an objective test rather than a subjective one. Thus, Petitioner must do more than argue that he would have insisted on going to trial—he must demonstrate that a reasonable person would have done so." Id. at 570–71 (emphasis omitted).

Regarding the purported justification for defense counsel's nonfeasance, the state court summarized his testimony:

> [Counsel] . . . testified that [he] did not believe K.S.'s letter was important, or that it formed the basis for a motion to withdraw Petitioner's pleas. [Counsel] further testified that he believed that no possible benefit to Petitioner could arise from the letter. He testified that he considered the letter to contain evidence of an uncharged felony, and believed that it could be used to support an additional criminal charge against Petitioner if he attempted to have his plea set aside, which would have rendered the stipulated plea agreement void. He also testified that the letter destroyed Petitioner's best possible defense (that he was completely innocent and that the victims all conspired to invent charges against him) by proving that he did commit an offense with K.S. In order to use K.S.'s letter and testimony, he would have to call a witness who would confirm that [Petitioner] had engaged in sexual misconduct with a minor. He further testified that, in his view, the letter was not a full recantation of K.S.'s accusations. He also noted

7

that Petitioner was not charged or convicted based on his conduct with K.S., and that K.S. could not recant the accusations by T.N.

Aplts' App'x at 564. Based upon counsel's testimony and the surrounding circumstances as found by the state court, the court opined:

> The Court fully understands [counsel's] reasons for not advising his client of the letter. Prior to the plea agreement, Petitioner faced four counts of second-degree sexual abuse relating to T.N. and V.B. [Petitioner] faced as many as eight additional counts relating to P.M. Finally, the letter itself established a second or third degree sexual assault on K.S., whose testimony would have to be endorsed by the defense in order to make use of whatever value her testimony concerning T.N. and V.B. might have. K.S.'s testimony at the evidentiary hearing established a sexual assault on a minor. If Petitioner were allowed to withdraw his plea and went to trial, K.S.'s testimony would effectively have branded him a child molester if received, perhaps lending credibility to the claims of T.N. and V.B. It is not difficult to understand how an attorney might reasonably conclude that such a letter was nothing but trouble for his client.

Id. at 574–75 (footnote omitted).

The state court concluded counsel's performance in failing to apprise Petitioner of K.S.'s letter was likely deficient. See id. at 572–73 ("[A] failure to advise one's client of a letter potentially forming the basis for a timely withdrawal of a guilty plea following sentencing may be ineffective assistance in certain circumstances . . . ."). The court further concluded, however, that Petitioner had not been prejudiced because, among other reasons, "whether a reasonable person in his position would have [moved to withdraw his guilty plea] is questionable." Id. at 576. Notably, the court did "not speculate" on the outcome if Petitioner had sought to directly appeal his convictions rather than file a motion to withdraw. Id. at 579. The

8

Wyoming Supreme Court summarily denied review.

C.

Next, Petitioner timely filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the federal district court. Paying little heed to the state court's analysis, the district court granted Petitioner a conditional writ on the state-court record and told the Wyoming Supreme Court to permit Petitioner to directly appeal his convictions:

> If [counsel] had given Bonney the recantation letter, Bonney would have likely sought to withdraw his guilty plea. According to the [state] trial court, withdrawal would have been denied. Bonney *then* would have likely appealed that decision to the Wyoming Supreme Court. On appeal, he could have raised the myriad ineffective assistance claims he now presents. Because counsel's constitutionally deficient performance deprived Petitioner of an appeal that he otherwise would have taken, Petitioner has been prejudiced and is entitled to an appeal.

Aplts' App'x at 645 (emphasis added) (footnotes omitted).

The district court held "[t]he [state] trial court's decision represents an unreasonable application of clearly established federal law because the court did not consider whether [counsel's] failure [to inform him of K.S.'s letter] prejudiced Bonney's right to appeal." Id. at 648–49. To reach its decision, the district court relied exclusively on Roe v. Flores-Ortega, 528 U.S. 470 (2000): "In Roe v. Flores-Ortega, the United States Supreme Court held that 'when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel

9

claim entitling him to an appeal.'" Aplts' App'x at 649 (quoting Flores-Ortega, 528 U.S. at 484). The district court effectively rejected the state trial court's contrary analysis in a footnote: "Respondents argue that Petitioner must demonstrate that the decision to withdraw the plea was rational under the circumstances. Petitioner may be able to meet that objective standard, but such analysis is unnecessary here because the subjective inquiry on the prejudice prong set out in Roe v. Flores-Ortega controls." Id. at 650 n.15 (internal citation omitted).

II.

So what shall we make of this difference of opinion between state and federal court? The district court viewed the matter quite differently than its state brethren. Specifically, the district court jumped beyond the state court's analysis addressing Petitioner's proposed challenge to his guilty plea to tell us that *once* the state court denied Petitioner's motion to withdraw his plea, he *then* would have appealed *that* decision. According to the district court, the proper focus of defense counsel's nonfeasance was its effect upon Petitioner's right to appeal his convictions rather than upon his right to move to withdraw his guilty plea. In his response brief at pages 35 and 42, Petitioner provides us the following explanation:

> [T]he state court too narrowly limited the issue in this case to withdrawal of the plea. And, even if the issue in the [state] post-conviction petition focused on the decision to plead guilty or withdraw the plea, in his petition for writ of review to the Wyoming Supreme Court, Mr. Bonney specifically raised his claim that, through counsel's actions, he was deprived of an appeal he wanted. Thus the issue before the federal district court was whether the state court properly addressed

10

counsel's ineffectiveness regarding either whether Mr. Bonney would have moved to withdraw his guilty plea or timely appealed.

* * *

Because the state court found that Mr. Bonney wanted to challenge his guilty plea—which he could do by either moving to withdraw it or by appealing—he was prejudiced by counsel's failures which deprived him an opportunity to make either choice.

(emphasis omitted).

## A.

Our primary task is to determine whether the Wyoming trial court's decision denying Petitioner post-conviction relief "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. 28 U.S.C. § 2254(d)(1). This limited standard of review is the same standard the district court ostensibly applied to grant Petitioner a conditional writ:

> **(d)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]

Id. "[C]learly established Federal law" for purposes of § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000).

We may limit our review still further by distinguishing between subsection (d)(1)'s references to state court decisions that are "contrary to," and those that

involve an "unreasonable application of" Supreme Court precedent:

> Under [subsection (d)(1)'s] "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.

Id. at 412–13. Pointing out "[t]he word 'contrary' is commonly understood to mean 'diametrically different, opposite in character or nature,' or 'mutually opposed,'" Williams explained that under AEDPA's "contrary to" clause, "the state court's decision must be substantially different from the relevant precedent of [the Supreme] Court." Id. at 405 (quoting Webster's Third Int'l Dictionary 495 (1976)). Meanwhile, under AEDPA's "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Lockyer v. Andrade, 538 U.S. 63, 75–76 (2003) (quoting Williams, 529 U.S. at 411). Instead,

> [a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 131 S. Ct. 770, 786–87 (2011). This is to say a grant of the writ is proper only where the state court's application of Supreme Court precedent is "objectively unreasonable." Lockyer, 538 U.S. at 76.

Needless to say, the AEDPA standard alone "is 'difficult to meet.'" Harrington, 131 S. Ct. at 786. And "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." Id. at 788 (internal citations omitted). In determining whether Petitioner has satisfied this demanding standard, we first consider Strickland and its applicable progeny. We then consider whether the Wyoming trial court's decision was "contrary to" or constituted an "unreasonable application of" these Supreme Court decisions in view of the particular circumstances of Petitioner's case.

B.

Strickland dealt with a claim of ineffective assistance of counsel in a capital sentencing proceeding, and was premised in part on the similarity between such a proceeding and the usual criminal trial. The Court's decision tells us "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that [the process] cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. As the Wyoming state court recognized, Strickland adopted a two-part standard for evaluating claims of ineffective assistance of counsel: First, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688. Second, "[t]he defendant must show that there is a

13

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Two terms after Strickland, the Supreme Court decided Hill v. Lockhart, 474 U.S. 52 (1985). In that case, the defendant unsuccessfully sought habeas relief claiming counsel misadvised him regarding the fact that, as a second offender, he was required to serve one-half rather than one-third of his sentence before becoming eligible for parole. Hill held "the two-part Strickland . . . test applies to challenges to guilty pleas based on ineffective assistance of counsel." Id. at 58.

> In the context of guilty pleas, the first half of the Strickland . . . test is nothing more than a restatement of the [Sixth Amendment] standard of attorney competence . . . . The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.
>
> * * *
>
> [W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence [i.e., evidence discovered after the plea], the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. . . . As we explained in Strickland, these predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the "idiosyncrasies of the particular decisionmaker."

Id. at 58–60 (internal footnote omitted).

14

Fifteen years later in <u>Flores-Ortega</u>, the Supreme Court again expressly extended <u>Strickland</u>, this time to "claims . . . that counsel was constitutionally ineffective for failing to file a notice of appeal." <u>Flores-Ortega</u>, 528 U.S. at 477. In doing so, the Court rejected the view that to justify relief based on defense counsel's failure to file a notice of appeal, a defendant need only show he did not consent to counsel's failure to file such notice. The Court observed that a defense attorney who disregards "specific instructions from the defendant to file a notice of appeal" violates the <u>Strickland</u> standard. <u>Id.</u> A "defendant, by instructing counsel to perfect an appeal, *objectively* indicate[s] his intent to appeal and [is] entitled to a new appeal without any further showing" of prejudice. <u>Id.</u> at 485 (emphasis added). But where a defendant "has not clearly conveyed his wishes one way or the other" to counsel regarding an appeal, "the circumstance-specific reasonableness inquiry required by <u>Strickland</u>" applies. <u>Id.</u> at 477–78. The question bearing upon deficient performance under the latter scenario is whether counsel had a duty to consult with the defendant about an appeal. The Court held:

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

<u>Id.</u> at 480.

Turning to the question of prejudice, the Court noted "the critical requirement

15

that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal." Id. at 484. "[W]e hold that when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." Id. Importantly, the Court stated "this prejudice standard breaks no new ground, for it mirrors the prejudice inquiry applied in Hill . . . ." Id. at 485.

> In Hill, we considered an ineffective assistance of counsel claim based on counsel's allegedly deficient advice regarding the consequences of entering a guilty plea. Like the decision whether to appeal, the decision whether to plead guilty (i.e., waive trial) rested with the defendant and, like this case, counsel's advice in Hill might have caused the defendant to forfeit a judicial proceeding to which he was otherwise entitled. We held that "to satisfy the 'prejudice' requirement of Strickland, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"

Id. (quoting Hill, 474 U.S. at 59) (internal brackets omitted).

Finally, in Padilla v. Kentucky, 559 U.S. 356 (2010), a decision rendered after the state court's decision in this case but before the district court's decision, the Supreme Court remanded for a determination of prejudice after concluding defense counsel had an obligation to inform the defendant that a plea carried a risk of deportation. The Court *clarified* what the foregoing case law reasonably suggests. Citing Flores-Ortega, the Court explained that to obtain relief from a guilty plea, the defendant must do more than allege he would have insisted on going to trial if he had

16

known of the risk of deportation. Instead, the defendant had to "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Id. at 372 (citing Flores-Ortega, 528 U.S. at 480, 486).

## III.

We commence our analysis of the Wyoming state court's decision in view of the foregoing Supreme Court precedent by recognizing "that the accused has the ultimate authority to make certain fundamental decisions regarding the case." Jones v. Barnes, 463 U.S. 745, 751 (1983). Decisions such as whether to plead guilty, whether to seek to withdraw that plea, and whether to appeal if unsuccessful rest with the defendant. See Flores-Ortega, 528 U.S. at 485. Perhaps this is why the State of Wyoming, despite the high hurdle the Strickland standard in combination with § 2254(d)(1) presents, concedes defense counsel's failure to notify Petitioner of K.S.'s post-sentencing letter in a timely fashion constitutes constitutionally deficient performance. We express no opinion on the correctness of the State's concession but instead turn our attention to the second prong of the Strickland standard—prejudice. See Strickland, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

## A.

Petitioner's overarching argument is that the state court unreasonably applied an objective prejudice standard to his claim of ineffective assistance because the

17

standard is subjective. According to Petitioner, Flores-Ortega held that a subjective prejudice standard applies whenever defense counsel's deficient performance deprives the defendant of an appeal "he otherwise would have taken." Flores-Ortega, 528 U.S. at 484. Petitioner provides us with factual argument (much of it in tension with the state court's findings) to suggest he never wanted to plead guilty and his counsel should have known this.[4] If defense counsel had notified him of K.S.'s letter, Petitioner says he would have sought to challenge his prior plea by filing a motion to withdraw or a notice of appeal. The notice of appeal, Petitioner tells us at page 17 of his brief, "would have preserved the option of seeking remand to withdraw the plea."[5] Due to counsel's *deficient performance in failing to apprise him of K.S.'s letter*, however, Petitioner was barred from pursuing either course and in particular the latter. This, according to Petitioner (and the district court), constitutes Strickland prejudice—end of story.

---

[4] On remand, the district court should remain mindful in addressing additional claims Petitioner raised in his petition but left unaddressed by the district court that "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Moreover, a writ shall not issue unless that state court's adjudication of such claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d)(2).

[5] This is surely the most Petitioner could have achieved on direct appeal from his convictions. First, Petitioner's plea agreement waived his right to appeal his convictions. See Aplts' App'x at 18. Moreover, any claim that K.S.'s post-sentencing letter constituted grounds to withdraw Petitioner's guilty plea likely would not be cognizable on direct appeal because Petitioner had not presented such claim in the first instance to the state trial court by a motion to withdraw that plea. Cf. United States v. Foy, 617 F.3d 1029, 1033–34 (8th Cir. 2010).

Unfortunately for Petitioner, we have been unable to locate any Supreme Court precedent, regardless of factual context, that clearly holds the Strickland standard—in whole or in part—is subjective. Flores-Ortega tells us the prejudice standard it announces "breaks no new ground, *for it mirrors the prejudice inquiry applied in* Hill v. Lockhart."[6] Id. at 485 (emphasis added). And one may reasonably read Hill as endorsing an objective prejudice standard by which to assess a collateral attack on a guilty plea based on ineffective assistance of counsel:

> "Even if a defendant shows that particular errors of counsel were unreasonable, . . . *the defendant must show that they actually had an adverse effect on the defense*." In addition, we believe that requiring a *showing of "prejudice"* from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel will serve the fundamental interest in the finality of guilty pleas . . . .

Hill, 474 U.S. at 58 (emphasis added) (internal citation omitted) (quoting Strickland, 466 U.S. at 693).

Lest any doubt remain as to the dubious nature of Petitioner's reading of Flores-Ortega, the Supreme Court in Padilla cited both Strickland and Flores-Ortega in support of an objective prejudice standard. In an application of existing Supreme Court precedent, the Court explained that to establish prejudice based on counsel's

---

[6] To be sure, where a defendant instructs counsel to file a notice of appeal (which Petitioner did not do in this case) and counsel fails to do so, the Strickland standard is satisfied because, for reasons Flores-Ortega explains, prejudice is presumed. Flores-Ortega, 528 U.S. at 483. Even still, the Court described such instruction as an *objective* indication of an intent to appeal. Id. at 485.

19

failure to advise his client of certain consequences of a guilty plea, a defendant "must convince the court that a decision to reject the plea bargain *would have been rational under the circumstances*." Padilla, 559 U.S. at 372 (emphasis added). This, of course, is the standard to which the Wyoming state court held Petitioner on collateral review. See Aplts' App'x at 570–71 ("Petitioner must do more than argue that *he* would have insisted on going to trial—he must demonstrate that a reasonable person would have done so.").

B.

Yet our rejection of Petitioner's reading of Flores-Ortega still does not answer the pivotal question of whether the state court's decision was either "contrary to" or—more befitting in this case—an "unreasonable application of" Supreme Court precedent within the meaning of § 2254(d)(1).[7] That inquiry ultimately requires us to "determine what arguments or theories supported or . . . could have supported, the state court's decision[.]" Harrington, 131 S. Ct. at 786. According to the Supreme Court, if fairminded jurists could disagree [whether] those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court" federal habeas relief is precluded. Id. In other words, a state court's determination that a claim lacks merit precludes federal habeas relief so long as a fairminded jurist might agree that such determination was not inconsistent with Supreme Court precedent.

---

[7] Of course, any state court decision that is "contrary to" Supreme Court precedent is necessarily an "unreasonable application of" such precedent.

20

1.

Let us alter course for the moment however, and begin with the argument or theory the Wyoming state court's decision did *not* endorse. The district court reasoned that the state court should have considered whether counsel's failure to inform Petitioner of K.S.'s letter prejudiced Petitioner's right to appeal. Not necessarily. Our reading of Flores-Ortega does not require a state court to consider what effect counsel's deficient performance in the *trial court* had on a defendant's right to appeal. The Supreme Court accepted Flores-Ortega "to resolve a conflict in the lower courts regarding counsel's obligation to file a notice of appeal." Flores-Ortega, 528 U.S. at 476. Flores-Ortega states at the outset that the case presents a discussion of "the proper framework for evaluating an ineffective assistance of counsel claim, *based on counsel's failure to file a notice of appeal without [defendant's] consent.*" Id. at 473 (emphasis added). Flores-Ortega stands for the unremarkable proposition that trial counsel's responsibility to represent his or her client effectively may extend to the filing of a notice of appeal.

In contrast, Petitioner's claim of ineffective assistance is grounded *not* in defense counsel's obligation to file a notice of appeal but in counsel's obligation to disclose K.S.'s partial recantation letter in a timely fashion—a letter Petitioner says constituted grounds to challenge his guilty plea. Unlike in Flores-Ortega, counsel's deficient performance in this case occurred not as part of the appellate process but the trial process. See, e.g., Kennedy v. Kemna, 666 F.3d 472, 486 (8th Cir. 2012)

21

(rejecting a broad reading of Flores-Ortega and fastening the prejudice showing required by Strickland to the forum in which counsel performs deficiently). Even the district court recognized as much: "If [counsel] had given Bonney the recantation letter, Bonney would have likely sought to withdraw his guilty plea. According to the [state] trial court, withdrawal would have been denied. Bonney *then* would have likely appealed that decision to the Wyoming Supreme Court." Aplts' App'x at 645 (emphasis added).

To apply Flores-Ortega here, the state court would have had to extend it beyond what Flores-Ortega clearly established. "[I]f a habeas court must extend a rationale before [that rationale] can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision." White v. Woodall, 134 S. Ct. 1697, 1706 (2014) (quoting Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)). Thus, Flores-Ortega is not clearly established precedent for the argument Petitioner effectively advances, namely that defense counsel's performance in failing to inform him of K.S.'s letter denied him the right to challenge his guilty plea by way of a motion to withdraw or, in the alternative, an appeal for the purpose of seeking remand to pursue the former.[8] See supra at 18 & n.5.

---

[8] When pressed at oral argument about whether Petitioner had the right to take a free standing appeal from his convictions without first moving to withdraw his guilty plea in the trial court, his counsel acknowledged an appeal would have provided more time to prepare a motion to withdraw pending remand. See Nixon v. State, 51 P.3d 851, 854 (Wyo. 2002) (timely appeal tolls thirty day time limit in which to file a motion to withdraw).

2.

Now let us take a look at what arguments or theories supported or could have supported the state court's decision. In rejecting Petitioner's petition for post-conviction relief, the state court's decision undoubtedly reflects the Supreme Court's standard for assessing collateral challenges to guilty pleas. In addition to Strickland, the state court relied on the Wyoming Supreme Court's decision in Palmer v. Wyoming, 174 P.3d 1298 (Wyo. 2008). Palmer "adhere[d] to the principle introduced in Hill." Id. at 1302. Hill, which involved a challenge to a guilty plea, says "[e]ven if a defendant shows that particular errors of counsel were unreasonable, . . . the defendant must show that they *actually* had an adverse effect on the defense." Hill, 474 U.S. at 58 (quoting Strickland, 466 U.S. at 693) (emphasis added). Indeed, Strickland says:

> It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.

Strickland, 466 U.S. at 693 (internal citation omitted). This is to say "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

23

We hold the state court—applying Supreme Court precedent—reasonably could have concluded that defense counsel's failure to disclose K.S.'s letter in a timely fashion was not sufficient to undermine confidence in the outcome of the prosecution and that a rational defendant would *not* have sought to withdraw his guilty plea despite K.S.'s *partial* recantation. See Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether . . . the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."). In recounting the facts, we need remain mindful of two points. First, as the Court in Padilla explained, "it is often quite difficult for petitioners who have acknowledged their guilt to satisfy Strickland's prejudice prong."

> The nature of relief secured by a successful collateral challenge to a guilty plea—an opportunity to withdraw the plea and proceed to trial—imposes its own significant limiting principle: Those who collaterally attack their guilty pleas lose the benefit of the bargain obtained as result of the plea. Thus, a different calculus informs whether it is wise to challenge a guilty plea in a habeas proceeding because, ultimately, the challenge may result in a *less favorable* outcome for the defendant, whereas a collateral challenge to a conviction obtained after a jury trial has no similar downside potential.

Padilla, 559 U.S. at 371 n.12, 372–73. Second, as Justice Brennan once observed: "Recantation testimony is properly viewed with *great suspicion*. It upsets society's interest in finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction." Dobbert v. Wainwright,

24

468 U.S. 1231, 1234 (1984) (Brennan, J., dissenting from the denial of cert. and application for stay) (emphasis added).[9]

In its decision, the Wyoming state court acknowledged the obvious—the withdrawal of Petitioner's guilty plea was wrought with hazard. If Petitioner were allowed to withdraw his guilty plea based on K.S.'s letter and stand trial, "K.S.'s testimony would effectively have branded him a child molester . . . perhaps lending credibility to the claims of T.N. and V.B." Aplts' App'x at 575. On top of that, K.S.'s letter indicates Petitioner's offensive conduct may have amounted to a third degree sexual assault upon her as then defined by Wyoming law—an assault carrying a maximum sentence of fifteen years under Wyo. Stat. Ann. § 6-2-306(a)(iii). The letter "destroyed Petitioner's best possible defense," namely that "he was completely innocent and that the victims all conspired to invent charges against him." Aplts' App'x at 564. The state court further noted "K.S.'s letter only pertained to her fabrication of uncharged accusations." Id. at 577. Recall the State never charged Petitioner with any crime against K.S. K.S. also admitted T.N. never told her that she lied about what Petitioner had done to her. K.S.'s accusations that T.N. also fabricated her story and pressured the other alleged victims to do the same in some

---

[9] Justice Brennan's observation seems all the more forceful for at least two reasons. First, K.S. suggested in her victim impact statement that her family was divided over Petitioner's guilt. Second, in both her letter and affidavit K.S. insisted T.N. lied about Petitioner's conduct, but in her testimony at the evidentiary hearing she admitted T.N. never told her she lied.

sort of revengeful plot against Petitioner were "largely speculation and commentary on credibility." Id. at 578. And "[n]either K.S.'s letter nor her affidavit and testimony cast doubt on the veracity of V.B.'s claims" of second degree sexual assault—an assault carrying a maximum sentence of twenty years under Wyo. Stat. Ann. § 6-2-306(a)(ii). Aplt's App'x at 578.

The state court also addressed how Petitioner's purported misconduct towards P.M., the lone male victim, might adversely affect Petitioner's conspiracy defense:

> The testimony of [defense counsel] and [the prosecutor] established that P.M. did claim to have been the victim of more than one sexual assault by Petitioner, that [the prosecutor] considered P.M. to be a credible witness based on his experience prosecuting child sexual abuse cases, and that the State would file as many as eight additional charges of sexual abuse relating to P.M. against Mr. Bonney if a plea agreement was not reached. [Defense counsel] testified that the charges against P.M. would seriously detract from a defense theory that the claims were the result of a conspiracy—P.M. was not in a position to conspire with the female victims, and the existence of a male victim tended to undermine a conspiracy defense as to the charges relating to T.N. and V.B.
>
> * * *
>
> There seems to be little doubt that there was communication to the effect that P.M.'s testimony could cause problems if allowed to be presented as 404(b) [other bad acts] evidence in this case, that additional charges could be filed, and that the State believed P.M. to be a credible witness. All of those statements were true.

Id. at 565-66.

The state court understood the *real possibility* that a challenge to Petitioner's guilty plea might result in a "less favorable outcome" for him. Padilla, 559 U.S. at 373. Cf. Harrington, 131 S. Ct. at 789–90 ("An attorney need not pursue an

26

investigation that would be fruitless, much less one that might be harmful to the defense."). The state court endorsed defense counsel's view that K.S.'s letter did not necessarily form the basis to withdraw Petitioner's guilty plea: "It is not difficult to understand how an attorney might reasonably conclude that such a letter was nothing but trouble for his client." Aplt's App'x at 575.

## IV.

Petitioner simply has not met his burden to show the Wyoming state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." Harrington, 131 S. Ct. at 786–87. We need not belabor this matter further. Based on the foregoing, we are satisfied a fairminded jurist could conclude the Wyoming state court took an acceptable measure of the case in view of Supreme Court precedent, none of which is directly on point, and rendered a decision that was neither "contrary to, [n]or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). For that reason alone, the judgment of the district court granting Petitioner a conditional writ of habeas corpus is reversed and this cause remanded for further proceedings consistent with this opinion.

REVERSED and REMANDED.

27